**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN P. CHILD, *et. al.*, | : | |
| | : | CIVIL ACTION |
| Petitioners | : | |
| | : | |
| v. | : | NO. 24-5479 |
| | : | |
| DELAWARE COUNTY, *et. al.*, | : | |
| | : | |
| Respondents | : | |

**<u>MEMORANDUM OPINION</u>**

**Goldberg, J.**                                                        **October 31, 2024**

On October 11, 2024, Petitioners, John P. Child, Euphroysyne (Joy) Schwartz, Paul Rumley, Kathryn Buckley, Dr. Alfeia DeVaughn-Goodwin, and Gregory Stenstrom commenced this lawsuit by filing a pro se Petition for Emergency Declaratory Judgment and Injunctive Relief. Petitioners have sued Delaware County, the five members of its County Council, the Delaware County Board of Elections and its Director, James Allen. On October 28, 2024, the Petition was subsequently amended and re-styled as an "Amended Emergency Petition as Underlying Complaint for Declaratory and Injunctive Relief with Request for Appointment of Special Master." Because the Petitioner/Plaintiffs lack the requisite standing to pursue their claims and are not entitled to the relief sought, the Petition/Underlying Complaint will be dismissed.

**FACTUAL AND PROCEDURAL BACKGROUND**

Petitioners allege they are all "qualified electors of Delaware County, Pennsylvania and are candidates and hold statutory roles under 25 P.S. § 2650 and § 2687 such as Authorized Representatives, Certified Poll Watchers, canvassers, and elected Committeemen and

Committeewomen." (Pet. Emer. Decl. Judgm. and Inj. Rel. ["Orig. Pet."] 1, ¶ 1, ECF No. 1). John Child is identified as the "RNC Committeeman for Radnor Precinct," Joy Schwartz is a Certified Poll Watcher, Petitioners Kathryn Buckley and Dr. Alfeia DeVaugn-Goodwin are identified as candidates for Pennsylvania State Representative and United States Congress, respectively, and Paul Rumley and Gregory Stenstrom are "Authorized Representative[s] under 25 P.S. §2650." (Id.). Petitioners contend that their "roles are vital in upholding the integrity of the election process by ensuring that Mail-In Ballots are processed lawfully and preventing voter fraud." Id.

Although their filings are less than clear, the gist of Petitioners' complaints are that Respondents failed to maintain accurate voter rolls. Specifically, Petitioners allege that "Delaware County's voter rolls contain thousands of unqualified electors, many of whom continue to receive mail-in ballots despite having moved out of the county or passed away." This is alleged to be "a direct violation of 52 U.S.C. § 20511 and 25 Pa. C.S. § 1901." (Orig. Pet., 3, ¶ 9). Petitioners also claim that Respondents failed to verify that all electors are qualified to vote, but have nevertheless issued and continue to issue mail-in ballots which can be submitted up until Election Day. (Id., 3, ¶¶ 9, 10). Petitioners reason that Respondents have therefore improperly issued mail-in ballots to unqualified electors, thereby allowing unqualified electors to unlawfully cast votes. (Id., ¶11).

Respondents advance a number of reasons why the Petitions/Underlying Complaint should be dismissed. These include the impropriety of commencing this action by filing a petition seeking declaratory and injunctive relief without first filing and properly serving a civil action complaint; the failure of Petitioners' pleadings to allege any valid causes of action against them; and

Petitioners' lack of standing to sue, Petitioners' failure to plead facts entitling them to declaratory and injunctive relief, and the bar of the Eleventh Amendment.[1]

On October 31, 2024, a hearing was held where the parties set out their respective positions.

**LEGAL STANDARDS**

Although Respondents have not formally filed a Motion to Dismiss, their Response to the Petition makes clear that they are seeking to dismiss this action pursuant to Fed. R. Civ. P.  Nos. 12(b)(1) and 12(b)(6).

The basic difference among the various 12(b) motions is that 12(b)(6) alone necessitates a ruling on the merits of the claim, whereas the others deal with procedural defects.  Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  "Because 12(b)(6) results in a determination on the merits at an early stage of plaintiff's case, the plaintiff is afforded the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff will be drawn."  Id.  Thus, the distinction between Rules 12(b)(1) and 12(b)(6) is important because the 12(b)(6) standard affords significantly more protections to a nonmovant."  Hartig Drug Co. v. Senju Pharm. Co., 836 F.3d 261, 268 (3d Cir. 2016).

"At issue in a Rule 12(b)(1) motion is the court's 'very power to hear the case.'"  Petruska v. Gannon Univ., 462 F.3d 294, 302 (3d Cir. 2006) (quoting Mortensen, 549 F.2d at 891).  Under Fed. R. Civ. P. 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction

---

[1]    Although pro se filings are entitled to liberal readings, pro se litigants nevertheless remain obligated to comply with procedural rules.  See Faretta v. California, 422 U.S. 806, 834 n. 46 (1975) ("[T]he right of self-representation . . . is not a license not to comply with relevant rules of procedural and substantive law"); Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021).  Respondents raise legitimate objections, concerning Petitioners' compliance with Fed. R. Civ. P. Nos. 3, 4 and 6.  However, in the interest of affording Petitioners an opportunity to be heard, I have overlooked these procedural technicalities.  Regardless, Petitioners should remain aware that their pro se status does not obviate the requirement that they follow the Rules of Civil Procedure.

to hear a claim.  In re Schering-Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012).  "A motion to dismiss for want of standing is properly brought pursuant to Rule 12(b)(1) because standing is a jurisdictional matter."  Id. (quoting Ballentine v.  United States, 486 F.3d 806, 810 (3d Cir. 2007)).  A Rule 12(b)(1) motion may proceed in two ways: it may attack the complaint on its face, or on its facts.  Mortensen, 549 F.2d at 891.  A facial attack "is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship among the parties, or because some other jurisdictional defect is present."  Constitution Party v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014).  A factual attack is an argument that there is no subject matter jurisdiction because the facts of the case do not support the asserted jurisdiction.  Id.  "In sum, a facial attack contests the sufficiency of the pleadings, whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the  jurisdictional prerequisites."  Id. (internal quotation marks and citations omitted).  In resolving a facial attack, the court applies the same standard of review used in considering a Rule 12(b)(6) motion, that is, it views "the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."  Id. (quoting In re Schering Plough, 678 F.3d at 243).  In contrast, in evaluating a factual challenge, "a court may weigh and consider evidence outside the pleadings."  Id.  (internal citation omitted).

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face."  Iqbal v. Ashcroft, 556 U.S. 662, 678 (2009).  A complaint "does not need detailed factual allegations" but it must contain something "more than labels and conclusions,"  Bell Atlantic v. Twombly, 550 U.S. 544,

555 (2007), and the plausibility standard requires a pleading to show "more than a sheer possibility that a defendant has acted unlawfully." Connelly v. Lane Constr. Corp., 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citation omitted). "A facially plausible claim is one that permits a reasonable inference that the defendant is liable for the misconduct alleged." Doe v. Univ. of the Scis., 961 F.3d 203, 208 (3d Cir. 2020) (citing Iqbal, 556 U.S. at 678).

## III.   DISCUSSION

### A.   Standing

Article III limits this Court's jurisdiction to "cases" or "controversies." U.S. Const. Art. III, § 2. To establish Article III standing, Petitioners must demonstrate that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). Petitioners bear the burden of establishing these elements. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).[2]

Petitioners purportedly bring this claim under 52 U.S.C. § 20511. (See ECF No. 16 at 5 of 8.) This statute provides criminal penalties for violations of the National Voting Registration Act of 1993 ("NVRA"). The NVRA "provides a private right of action to file a lawsuit for those who are "aggrieved by a violation of [the] Act." Republican Nat'l Comm. v. Aguilar, No. 24-518, 2024 WL 4529358, at *3 (D. Nev. Oct. 18, 2024). However, "mere technical violation of a procedural requirement of a statute that results in no concrete harm is insufficient to establish Article III injury in fact." Pub. Int. Legal Found. v. Boockvar, 370 F. Supp. 3d 449, 455 (M.D. Pa. 2019).

Instead, to make out injury in fact, Petitioners must show that they suffered an "invasion of a legally protected interest [that is both] concrete and particularized [as well as] actual or

---

[2]   Because Petitioners cannot demonstrate injury in fact, I need not address steps two and three.

imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560. A particularized injury is one that "affect[s] the plaintiff in a personal and individual way." Id. at 560 n.1. As the Honorable Kai N. Scott recently explained in a case involving many of the same Petitioners in this case, "[i]t is not enough for a plaintiff to raise 'only a generally available grievance about Government— claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large.'" Mancini v. Delaware Cnty., PA, No. 24-2425, 2024 WL 4123785, at *2 (E.D. Pa. Sept. 9, 2024) (quoting Lance v. Coffman, 549 U.S. 437, 439 (2007)). Moreover, mere speculation is not sufficient to establish injury in fact. See id. (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013)).

Here, Petitioners are "candidates . . . authorized representatives and poll watchers" who believe "Defendants' actions in issuing and soliciting mail-in ballots to unqualified electors directly impacts [them]." (ECF No. 16 at 3 of 8.) They allege that an unqualified ballot,

> once separated from its mail-in ballot envelope is a 'fired bullet' for which there is no remedy, and will result in imminent, irreparable harm to Petitioners, as candidates, who will be harmed by the tabulation of unlawful votes, and their [] statutory 'authorized representatives' who will be thwarted from fulfilling their duties.

(ECF No. 11 at 3 of 8.) Petitioners further explain that these harms pose: (1) an "immediate threat to the accuracy of the election results"; and (2) will impact "not only the Plaintiffs but also the public's right to a fair and lawful election." (ECF No. 16 at 3 of 8.)

Put simply, Petitioners allege that both they and the public will be harmed by the distribution and possible collection of unqualified voter ballots. This is exactly the type of generalized grievance that courts throughout this country have consistently dismissed for lack of standing. See Graeff v. United States Election Assistance Comm'n, No. 22-682, 2023 WL 2424267, at *5 (E.D. Mo. Mar. 9, 2023) (collecting cases); Id. at *6 (no standing where plaintiffs

did not "differentiate [their] interests from the interests of the voting public at large."); see also
Bognet v. Sec'y Commonwealth of Pa., 980 F.3d 336, 356 (3d Cir. 2020). Vacated as moot *sub nom*. Bognet v. Degraffenreid, 141 S. Ct. 2508 (2021) (internal quotations and citations omitted)
("[a] vote cast by fraud or mailed in by the wrong person through mistake, or otherwise counted
illegally, has a mathematical impact on the final tally and thus on the proportional effect of every
vote, but no single voter is specifically disadvantaged."); Toth v. Chapman, No. 22-208, 2022 WL
821175, at *8 (M.D. Pa. Mar. 16, 2022) (internal quotations and citations omitted) ("Their
purported injuries are shared by all Pennsylvania voters; such an undifferentiated injury does not
support standing as it is equally shared by every citizen and relief would . . . no more directly
benefit[ ] [Plaintiffs] than the public at large.").

Moreover, as Petitioners made clear at the October 31 hearing, they seek only a declaration
that Delaware County must follow Federal and State Law which dictates that only qualified
persons are given mail-in ballots.  This "generalized interest in seeing that [state and federal laws
are] obeyed [] is insufficient to establish article III standing." Mancini, 2024 WL 4123785, at *3
(internal quotations and citations omitted).

To the extent Petitioners allege Respondents' actions interfere with their ability to perform
their duties come election day, that claim is also far too speculative.  Even if Petitioners could
establish that Respondents provided ballots to "unqualified" voters, they have not established that
any such ballot will be cast, nor do they connect any alleged improper voting to their roles as
"authorized representatives and poll watchers."  Petitioners' argument rests on the unproven fear
that: (1) Defendants provided ballots to "unqualified" voters; (2) unknown persons will illegally
cast those ballots; (3) the illegal votes will go unchallenged; (4) the votes are counted; and (5) the
counted votes will somehow preclude Petitioners from doing their duty and harm them in some

unspecified manner.  This "chain of contingencies [which] amount[s] to mere speculation is insufficient for an injury-in-fact."  <u>Aichele</u>, 757 F.3d at 364 (internal quotations and citations omitted).  Indeed, courts in this Circuit have rejected similar allegations as "highly speculative." <u>Donald J. Trump for President, Inc. v. Way</u>, No. 20-10753, 2020 WL 6204477, at *6 (D. N.J. Oct. 22, 2020) ("Plaintiffs' arguments rests on their highly speculative fear that once State officials mail ballots to its voters and members, there will be scores of ballots that *can* be improperly and unlawfully repurposed.").

In these circumstances, Petitioners have failed to make out standing.

B.    *Entitlement to Declaratory Relief*

In their statements at the October 31, 2024 Hearing, Petitioners clearly represented that they are no longer asking the Court to grant them injunctive relief; instead they are **only** seeking the entry of a declaratory judgment decreeing that it is unlawful to provide mail-in ballots to unqualified electors.

"The Declaratory Judgment Act, 28 U.S.C. § 2201, creates a remedy by which federal courts may declare the rights and other legal relations of any interested party seeking such a declaration when there is a case of actual controversy."  <u>Benihana of Tokyo, Inc.</u>, 622 F. App'x 169, 174 (3d Cir. Aug. 11, 2015) (internal quotation marks and citation omitted).  The statute reads, in relevant part:

> (a)    In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. . . . 28 U.S.C. § 2201(a).

"[T]he question in each case is whether the facts alleged, under all  the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  <u>Maryland Cas. Co. v.</u>

<u>Pacific Coal & Oil Co.</u>, 312 U.S. 270, 273 (1941).  It is therefore incumbent upon the plaintiff to demonstrate that an "actual controversy" existed at the time the complaint was filed.  <u>Aetna Life Ins. Co. v. Haworth</u>, 300 U.S. 227, 239 (1937).  Stated otherwise, a plaintiff bringing an action for declaratory judgment must therefore first plead, and thereafter prove, by a preponderance of the evidence, that there is an actual controversy between the parties.  <u>Benihana</u>, 622 F. App'x at 174.

Here, there is no actual controversy.  Under 25 P.S. § 2602(t), "[t]he words 'qualified elector' shall mean any person who shall possess all of the qualifications for voting now or hereafter prescribed by the Constitution of this Commonwealth, or who, being otherwise qualified by continued residence in his election district, shall obtain such qualifications before the next ensuing election."  Pennsylvania permits a qualified elector to apply at any time before any primary or general election for an official mail-in ballot either in-person or "on any official county board of election form addressed to the Secretary of the Commonwealth or the county board of election of the county in which the qualified elector's voting residence is located."  25 P.S. § 3150.12(a).  Thereafter, "[t]he county board of elections, upon receipt of any application of a qualified elector . . . shall determine the qualifications of the applicant by verifying the proof of identification and comparing the information provided on the application with the information contained on the applicant's  permanent registration card."  25 P.S. § 3150.12b(a).  "If the board is satisfied that the applicant is qualified to receive an official mail-in ballot, the application shall be marked 'approved.'"  25 P.S. § 3150.12b(a)(1).  As the foregoing statutes evince, the law of Pennsylvania already affords Petitioners the exact relief which they are seeking here.  Accordingly, there is no actual controversy between these parties and nothing to declare – Respondents are already obligated to only issue mail-in ballots to those electors who are qualified.  Because Petitioners

have not pled and cannot prove entitlement to a declaratory judgment, their claim is properly dismissed.

Moreover, the "actual controversy test" is an objective one, and a subjective belief or fear is insufficient to satisfy the burden of showing the existence of an actual controversy. <u>Solid State Equip. Corp. v. Verteq, Inc.</u>, Civ. No. 2023 U.S. Dist. LEXIS 12501 at *4 (E.D. Pa. Jan. 26, 2003). Giving their pleadings the most liberal reading possible, at most, Petitioners have set out only a subjective belief or fear that there will be fraudulent voting. Because this is insufficient to satisfy the burden of establishing, by a preponderance of the evidence, the existence of an actual controversy, Petitioners have not succeeded in pleading a viable claim for declaratory judgment.

### C.    *Purcell Principle*

Finally, Petitioners' requested relief triggers the principle that federal courts should not interfere with state election law on the eve of the election. <u>See Purcell v. Gonzalez</u>, 549 U.S. 1 (2006). "That principle—known as the <u>Purcell</u> Principle—reflects a bedrock tenet of election law: When an election is close at hand, the rules of the road must be clear and settled." <u>Merrill v. Milligan</u>, 142 S. Ct. 879 (2022) (Kavanaugh, J. concurring). This Principle acts to avoid judicially created confusion around elections and, at minimum, "heightens the showing necessary for a plaintiff to overcome the State's extraordinarily strong interest in avoiding late, judicially imposed changes to its election laws and procedures." <u>Id</u>. at 881. Petitioners fail to adequately explain how the identified 12,000 voters were determined to be unqualified, and as such they do not satisfy <u>Purcell</u>'s high standard.

A Declaratory Judgment by this Court could confuse voters in Delaware County by casting doubt on the status of their mail-in ballots. Fearing their mail-in ballot is invalid, voters may attempt to vote in person on election day. As the Supreme Court has recognized, "practical

considerations sometimes require courts to allow elections to proceed despite pending legal challenges." <u>Riley v. Kennedy</u>, 553 U.S. 406, 426 (2008). Even if Petitioners had adequately established standing, "the imminence of the election and the inadequate time to resolve the factual disputes," prevent the imposition of declaratory relief in this instance. <u>Purcell</u>, 549 U.S. at 6.

For all of the foregoing reasons, the Petition and Amended Emergency Petition/Underlying Complaint will be denied and dismissed.

An appropriate Order follows.