UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN P. CHILD, et al, ) CV NO. 24-5479
Plaintiffs,
vs.
DELAWARE COUNTY BOARD OF ELECTIONS, et al,
Defendants.

Philadelphia, PA
October 31, 2024
9:33 a.m.

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE MITCHELL S. GOLDBERG
UNITED STATES DISTRICT COURT CHIEF JUDGE

APPEARANCES:

For the Plaintiff: GREGORY STENSTROM, PRO SE
1541 FARMERS LANE
GLEN MILLS, PA 19342

For the Defendants: J. MANLY PARKS, ESQUIRE
ALESSANDRA MUNGIOLI, ESQUIRE
DUANE, MORRIS, LLP
30 SOUTH 17TH STREET
PHILADELPHIA, PA 19103

Audio Operator: MICHAEL BECK

Transcribed by: DIANA DOMAN TRANSCRIBING, LLC
P.O. Box 129
Gibbsboro, New Jersey 08026-0129
Phone: (856) 435-7172
Fax: (856) 435-7124
Email: dianadoman@comcast.net

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

# I N D E X

COLLOQUY: PAGE

RE: TIMING OF FILING IN
SECRETARY OF THE COMMONWEALTH

By the Court & Mr. Stenstrom 5

RE: TIMING OF FILING IN
COUNTY OF DELAWARE

By the Court & Mr. Stenstrom 17

RE: PLAINTIFF'S RECITATION OF THE LAW

By the Court & Ms. Mungioli 23

ARGUMENT: PAGE

By Ms. Mungioli 35

By Mr. Stenstrom 40

(Proceedings commence at 9:33 a.m.)

COURTROOM DEPUTY: All rise. Court is now in session, the Honorable Mitchell S. Goldberg presiding.

THE COURT: Have a seat. All right. There is, now, two matters in front of me, but I want to just get everyone identified to know who's who.

The first matter is various plaintiffs versus Delaware County defendants. So, on that matter, I have one, two, three, four, five plaintiffs -- I'm sorry, six plaintiffs. So, do you want to identify yourselves? Who's here?

MR. STENSTROM: Your Honor, should I stand?

THE COURT: Whatever makes you comfortable. You can sit, stand. I'm fine with either.

MR. STENSTROM: Thank you, Your Honor. If it pleases the Court, my name is Gregory Stenstrom. I'm one of the co-petitioners. The group of petitioners have asked me to speak on their behalf.

THE COURT: Okay.

MR. STENSTROM: However, they are here, and I can identify Joy Schwartz, to my left, is one of the --

MS. SCHWARTZ: Good morning, Your Honor.

MR. STENSTROM: -- is one of the co-petitioners. We have Mr. John Proctor Child --

THE COURT: Sir.

MR. CHILD: Good morning, Your Honor.

MR. STENSTROM: -- who is the lead petitioner. We have Paul Rumley --

THE COURT: Sir.

MR. STENSTROM: -- is one of the co-petitioners. We have Kathy Buckley is on her way. She's a co-petitioner, and she's a candidate for representative -- a State Representative. And we have Dr. Alfeia Goodwin. She is a candidate for U.S. Congress from our District. I don't -- Alfeia --

MS. SCHWARTZ: She was not able to make it this morning.

MR. STENSTROM: Oh, Alfeia is not able to make it, but if we need to get ahold of her, we will, but Kathy Buckley will be here soon. We represent the co-petitioners, Your Honor.

THE COURT: Okay. Good morning.

MR. STENSTROM: Good morning, Your Honor.

THE COURT: And I note there was a matter filed this morning against the Secretary of the Commonwealth, and there is some overlap, I think. Mr. -- excuse me for mispronouncing names -- Stenstrom, Schwartz, Buckley, Rumley and Child are all named as plaintiffs, along with a lot of other plaintiffs, but I'll come back to that.

So, Mr. Stenstrom, you're going to speak on behalf

of the petitioners?

MR. STENSTROM: Yes, Your Honor.

THE COURT: Okay. And who is here on behalf of the Delaware County defendants?

MS. MUNGIOLI: Good morning, Your Honor. My name is Alessandra Mungioli. I'm an attorney with Duane, Morris. I'm here with my colleague, Mr. Manly Parks, and we're appearing before you today on behalf of the defendants.

THE COURT: All right. Good morning.

MS. MUNGIOLI: Good morning.

THE COURT: Okay. So --

MR. STENSTROM: I have an objection, Your Honor.

THE COURT: You have an objection?

MR. STENSTROM: Yes, Your Honor. One of the things we asked for is Mr. Manly Parks is the solicitor for the BOE. He's been the solicitor for four years. He is not only the representative, but he's also a participant. Ms. Mungioli, with all due respect, Your Honor, is a recently assigned junior associate. The only testimony, because attorneys do -- are both people who testify and represent the client -- what we would request, if the attorneys are going to be considered under law to be also able to testify, that the person with direct knowledge is Mr. Manly Parks, and we would like anything he says on the record today, and rather than Ms. Mungioli, with all due respect, has only been his associate

for, to my understanding, about a month. So, the only thing, information, she could have would be what would be conveyed to her by Mr. Parks. It's a big issue, Your Honor.

What we want is Mr. Manly Parks to testify, because if there is any --

THE COURT: Remind me, who is Mr. Manly Parks again?

MR. STENSTROM: Mr. Parks is the solicitor for the BOE. He's sitting next to Ms. Mungioli.

THE COURT: That's you? Okay.

MR. STENSTROM: So, any --

THE COURT: Are you objecting to Delaware County picking their lawyer?

MS. STENSTROM: No, I'm not objecting to the lawyer, Your Honor --

THE COURT: Okay.

MR. STENSTROM: -- but Mr. Parks is the primary solicitor. We've been in court many, many times.

THE COURT: Yeah.

MR. STENSTROM: And if there is any perpetration of fraud that would violate the Rules of Professional Conduct --

THE COURT: What's your objection? State it concisely in one sentence.

MR. STENSTROM: My objection is Mr. Manly Parks should be the person who represents, because he's going to be giving the testimony.

THE COURT: Delaware County can pick who they want to represent them. Your objection is overruled.

MR. STENSTROM: Yes, Your Honor.

THE COURT: And, Mr. Stenstrom, we're going to start to talk about this in a little bit more detail.

MR. STENSTROM: Yes, Your Honor.

THE COURT: That's a completely, totally frivolous objection. I am going to be patient, respectful with you and give you as much slack as I deem appropriate, because you are not represented by counsel. Your choice. But I would respectfully ask you, so we can get through this, not to raise completely, utterly frivolous matters like that to delay the proceeding.

So, your objection is overruled. Delaware County is absolutely entitled to bring whatever lawyer they want to represent them here.

MR. STENSTROM: Yes, Your Honor.

THE COURT: So, getting to the complaint that you filed this morning against the Secretary of the Commonwealth, I assume that you have not served a summons, as you're required to do under the Rules of Civil Procedure, on the Secretary of the Commonwealth, am I right about that?

MR. STENSTROM: We'll be doing that this afternoon, Your Honor, and the Rules of Civil Procedure give us 90 --

THE COURT: I'm just asking you, have you served a

summons?

MR. STENSTROM: Not yet, Your Honor.

THE COURT: But you're going to?

MR. STENSTROM: We're going to be doing that this afternoon, driving --

THE COURT: Understood. Understood. So, my question to you is, as I understand it here, in this matter, you are alleging failure to certify voting machines, improper distribution of mail-in ballots, obstruction of judge's elections, restrictions on poll watchers and authorized representatives, failure to classify centralized counting centers as precincts.

My question is, today is Thursday. The election is Tuesday. Why did you wait until this morning to file a matter that would, if we litigated it, which I doubt we will, why did you file this matter so late?

MR. STENSTROM: Your Honor, for the past four years, as one of our exhibits, what we submitted -- the reason we submitted that, Your Honor, is that is a -- it serves as judicial notice. One of the exhibits is a Supreme Court case that we have, with Exhibits A through KK, that demonstrate the due diligence that we've performed to exhaust our administrative remedies.

Most of the issues raised today have only occurred within the past two weeks, and it wouldn't have been ripe to

submit the request, very narrow in scope, for declaratory. We're only asking for declaratory relief. We've asked for some injunctive relief, which I understand we'll need to discuss. But the declaratory relief that we've requested, and it's just declaratory rulings on law, Your Honor, that --

THE COURT: Just, what, I'm sorry?

MR. STENSTROM: Declaratory rulings, just to state --

THE COURT: Yes.

MR. STENSTROM: -- what the law is, Your Honor.

THE COURT: Right.

MR. STENSTROM: We've only asked the Court, you --

THE COURT: So, your answer is, there's been a series of administrative matters that were not resolved --

MR. STENSTROM: Yes, Your Honor.

THE COURT: -- and therefore, you couldn't, in good faith, file the suit until this morning?

MR. STENSTROM: Yes, Your Honor. This is the only opportunity to --

THE COURT: Could you explain to me what those are, please?

MR. STENSTROM: Your Honor, we have gone to court multiple times, in Delaware County, Montgomery County. We've listed some of the exhibits in there. We have dozens and dozens of exhibits. What --

THE COURT: Well, I mean, therein lies the problem.

MR. STENSTROM: Yeah.

THE COURT: You can't expect me, having filed this this morning, and focusing on your suit against Delaware County, to have read that entire thick packet.

MR. STENSTROM: I understand.

THE COURT: Right?

MR. STENSTROM: Yes, Your Honor. There is a rule --

THE COURT: So, explain it to me, as concisely as you can --

MR. STENSTROM: Yes, Your Honor. We filed that --

THE COURT: -- your answer is --

MR. STENSTROM: Sorry, Your Honor.

THE COURT: -- I -- I -- there was a series of administrative matters that were not resolved, and I'm asking you what were they?

MR. STENSTROM: The administrative errors are multiple violations of Federal law. This morning, we filed a Rule 57, and it's not a complaint.

THE COURT: What administrative matters? What are they, in front of what body?

MR. STENSTROM: We have gone to multiple underlying courts, the Common Pleas Court, the Commonwealth Court, the Pennsylvania Supreme Court and the Supreme Court, and --

THE COURT: And, which -- which was the latest

ruling that prevented you from filing this suit this morning?

MR. STENSTROM: Last week, on Friday, in the case, Mancini and Goodwin versus Delaware County, we received and elicited testimony on transcript from the Secretary of the Commonwealth for Elections, Jonathan Marks. He admitted that the State has not completed certified testing, secured bill of validation of code, and that there is equipment being run in the election that is not certified.

THE COURT: And you received this information?

MR. STENSTROM: Friday.

THE COURT: And you had no idea of this before Friday?

MR. STENSTROM: Of his testimony, which said that?

THE COURT: Yeah.

MR. STENSTROM: No.

THE COURT: Well, I thought you said you filed other lawsuits?

MR. STENSTROM: Yes, we -- excuse me, Your Honor?

THE COURT: I thought you said you'd filed other lawsuits --

MR. STENSTROM: Yes, sir, Your Honor. In --

THE COURT: -- raising the same allegations?

MR. STENSTROM: -- in Montgomery County.

THE COURT: When did you file the Montgomery County suit?

MR. STENSTROM: In Montgomery County, they also used uncertified and untested machines. That hearing was Wednesday of last week. We received the order, I believe, Wednesday or Thursday from the Judge, and we received the order from the DelCo Judge --

THE COURT: Why didn't you file this suit when you filed the Montgomery County -- when did you file the Montgomery County suit?

MR. STENSTROM: That was filed by Mr. Mancini about four or five months ago. It took some time.

THE COURT: What -- same allegations?

MR. STENSTROM: The allegations were across the State, Your Honor. In order to be ripe for you to hear as a Federal judge, we have to exhaust our administrative remedies, the exhaustion from a point where we have the State, through a policy, not law. The Secretary of the Commonwealth, at the direction of Governor Shapiro and Jonathan Marks, have directed, unlawfully, counties in Pennsylvania that they are allowed to run uncertified and unauthorized software on their machines.

That is a matter of policy. As a matter of law, and Federal law, Federal statute and Pennsylvania statute, that is a direct violation of law. The judges, in the underlying cases, Judge Haaz, in Montgomery County, and Judge Whelan, in Delaware County, we are going to appeal those cases, because

they exceed their discretion and jurisdiction --

THE COURT: I'm not -- you're not addressing my question.

MR. STENSTROM: My question --

THE COURT: I'm just trying to figure out why you waited until the last minute to file the suit in front of me --

MR. STENSTROM: It was ripe --

THE COURT: -- raising -- raising, if true, very substantial allegations four days before the election.

MR. STENSTROM: Your Honor --

THE COURT: That's all I'm asking you, and you have answered. You're saying, we -- we -- according to you, you had to wait for decisions of other agencies, and according to you, that prevented you from filing the suit in this court at the last minute.

MR. STENSTROM: Well, Your Honor --

THE COURT: Did I fairly state where you're --

MR. STENSTROM: No, that's not quite right.

THE COURT: Okay.

MR. STENSTROM: If I could just continue?

THE COURT: Sure, go ahead.

MR. STENSTROM: As you know, lawyers and counties, they have -- they deploy strategies. The strategy that's been deployed against the public is one of delay, to get to the

election and be able to perform unlawful actions and violate Federal Codes and slow-roll us in the underlying courts. I do not expect, Your Honor, nor do I -- I do not expect you to become -- I'm not asking you to be an appellate court. I'm not asking you to rule under those.

The only relief, the narrow relief we're requesting, Your Honor --

THE COURT: In the new lawsuit filed this morning?

MR. STENSTROM: -- this morning and today, the matters before the Court, we are only asking for a declaratory ruling to give -- because we got --

THE COURT: I'm sorry to interrupt you. I'm not asking you what relief you are seeking. I'm asking you, and I think I understand it, why you waited until four days before the election to file it, and your -- I think I understand your answer. So, let me ask the counsel for the -- well, there's not even counsel for the Secretary of State here. I mean, therein lies the problem. You didn't even serve the Secretary.

MR. STENSTROM: It's a separate action, Your Honor.

THE COURT: Yes.

MR. STENSTROM: I only have -- there's only one question, today, before the Court, one thing that we're asking --

THE COURT: The Delaware County matter.

MR. STENSTROM: No, Your Honor.

THE COURT: Yes.

MR. STENSTROM: It's the State -- Your Honor, as we -- the only --

THE COURT: Yes, yes.

MR. STENSTROM: -- I just want, for the record, Your Honor --

THE COURT: Yes. Yes, sir, you have not properly served the Secretary of State. I'm just curious as to why you waited til the last minute. That case is not on my Docket. We've had a dialogue about it.

MR. STENSTROM: I understand, Your Honor.

THE COURT: We are moving to the Delaware County case now. When you properly serve the Secretary of State, they can respond and come into this courtroom and be heard.

MR. STENSTROM: Your Honor, that was simply a --

THE COURT: Sir, we're moving on.

MR. STENSTROM: That was simply a praecipe, but one thing I want to make clear, Your Honor --

THE COURT: Yes?

MR. STENSTROM: -- that's simply a praecipe of judicial notice. We would love for you to hear that later.

THE COURT: When you properly serve the Secretary of State --

MR. STENSTROM: Yes, sir, of course.

THE COURT: -- I'll consider it.

MR. STENSTROM: But -- but, Your Honor, I just have one --

THE COURT: So, now moving onto the -- no, we are moving --

MR. STENSTROM: -- thing -- the one thing, Your Honor, I just --

THE COURT: -- we are moving --

MR. STENSTROM: Yes, sir.

THE COURT: -- onto the Delaware County matter.

MR. STENSTROM: Yes, Your Honor.

THE COURT: I just wanted to get some background as to why you waited til the last minute, and you've given it to me. That case is not officially before me.

MR. STENSTROM: Absolutely, Your Honor.

THE COURT: You have not served the Secretary of State.

MR. STENSTROM: Yes, Your Honor.

THE COURT: Okay. So, thank you for the conversation about that. Let's move to the matter involving Delaware County.

That also -- first question, that also was filed not this morning, but you've now filed what I understand to be a third pleading. You filed an original petition. The record should reflect -- well, actually, we were on the phone, so

that we do have a record. You told -- I said that you hadn't filed it properly. It was considering the Delaware County's position that you had not filed a properly filed complaint or summons, and you indicated you were going to follow-up and file a complaint. And I believe you did that this morning, as well. So, if I asked you that same question, your original petition, in fairness, was filed --

MR. STENSTROM: October 11th, Your Honor.

THE COURT: Exactly, thank you. October 11th. Is it the same answer as to why?

MR. STENSTROM: No, Your Honor.

THE COURT: Let me ask my question.

MR. STENSTROM: I'm sorry, Your Honor.

THE COURT: Why, because under the law, the timing of your filing is pertinent, so I'd like to hear your response as to why you've waited so long to bring the action against Delaware County.

MR. STENSTROM: Yes, Your Honor.

THE COURT: Go ahead.

MR. STENSTROM: As you'll see, in the exhibits to the pleadings, they include 27 emails from the co-petitioners here, Mr. Child, one of the potential witnesses here before me, behind me, is Laura Lewis, Joy Schwartz, Nick Montanaro is behind me. He's a witness. Over the course of, actually June, but what we included in the filings was from August

until October 10th, we filed notice with the defendants that they were in violation of Federal and State law, because they were distributing and providing mail-in ballots to unqualified electors. We identified those unqualified electors in these letters.

Our grievances were ignored. On October 10th --

THE COURT: Excuse me?

MR. STENSTROM: Yes, Your Honor.

THE COURT: Excuse me.

(Pause in proceedings.)

THE COURT: Go ahead, sir.

MR. STENSTROM: Am I speaking too quickly, Your Honor? I can slow --

THE COURT: No, no. I just was conferring with my law clerk. Go --

MR. STENSTROM: Yes, Your Honor.

THE COURT: Yeah, you're doing fine.

MR. STENSTROM: On October 10th, at approximately 5:00 p.m., as noted in the pleading -- our pleading, counsel woman, Christine Reuther, basically, sent a very sarcastic letter to the lead petitioner, Mr. Child, that she was glad he had found a hobby, but that if there were any further grievances that we should take them to court. That was on November 5th.

At that point, we believed we exhausted all

administrative remedies. We received our final response from one of the defendants that they would not -- they were recalcitrant in complying with Federal law, that they ignored our pleadings. So, on October 11th, at approximately 9:00 a.m., we complied, and we went with Ms. Christine Reuther's suggestion that we resolve this in court, realizing that we only had a very short time. The only viable action that we had to seek, at this point, because the election is on next week, Your Honor, is, at this point, we just need a declaratory ruling from you that says --

THE COURT: And, now, you're -- you're -- I know what you're --

MR. STENSTROM: You know where I'm going, Your Honor.

THE COURT: I won't talk about the relief this second.

MR. STENSTROM: It's the only thing that we've got.

THE COURT: I'm just trying to figure out why this was filed so belatedly.

MR. STENSTROM: Have I responded? Do you understand, Your Honor?

THE COURT: Not really, but I want to ask another question to make sure that I do understand.

MR. STENSTROM: Yes, Your Honor.

THE COURT: Is your -- is your -- as I understand

it, your basic claim -- and I'm generalizing -- is that there are thousands -- I think your number is 12,000 -- unqualified electors on the voter rolls who are non-citizens or deceased. And my question to you is, if I -- if we get to an evidentiary point in this proceeding and ask you to prove that, when -- on what date were you able to come into the evidence -- at what date did you obtain the evidence that there are that many unqualified electors? And that goes to my question of, if you had this evidence, if you have it, again, why did you wait so long to come to prove your case --

MR. STENSTROM: I understand your --

THE COURT: -- in Federal Court?

MR. STENSTROM: -- I understand, Your Honor.

THE COURT: Okay.

MR. STENSTROM: Some of this is technical, but in the State of Pennsylvania and all states, there is registered voter rolls. And on those voter rolls are all types of people. You can register your cat, Fluffy, to register to vote. An illegal alien, when they get their license, driver's license, can inadvertently register to vote. The subject of cleaning the voter rolls up, which was yesterday, Judge Youngkin, as you know, the U.S. Supreme Court, ruled that they could remove illegal aliens or unqualified electors. That is germane only to the registered voting roll.

The subject today is, we're not here to adjudicate

that. I am only asking you on very narrow relief is, what we care about, is the people that were on that list, on the registered voter rolls, that applied for applications to vote who are either dead or were non-citizens or were not residents of the County. Those would be unqualified electors. The defendants have a --

THE COURT: You have proof of that?

MR. STENSTROM: Yes, Your Honor. It's in their --

THE COURT: And I am asking a very direct --

MR. STENSTROM: -- in their own exhibits.

THE COURT: -- let me --

MR. STENSTROM: Yes, Your Honor.

THE COURT: -- let me ask my question. I am asking a very direct question, which is, when did you come into possession of that proof?

MR. STENSTROM: Of the proof over the past, since August 10th, until -- actually, all the way up until yesterday, Your Honor.

THE COURT: And why didn't you file your lawsuit in August? Why did you wait until four days before the election?

MR. STENSTROM: We gave due notification to the defendants, ans we're required under law, Your Honor, to exhaust our administrative remedies before we waste the Federal Court's time. What we had to do is come here with a meaningful case developed over the last two months to show

that the defendants were recalcitrant in continuing to provide mail-in ballots to unqualified electors. Had the defendants responded to the first few letters, you know, in good faith, and said, boy, mistakes were made, we're going to remove them and so forth, then we wouldn't be here today, Your Honor, but what we showed over the last two months, is a recalcitrance and a willingness of the defendants to violate Federal statutes and State statues, the Federal statutes of which require -- or the penalties are five years in jail.

We notified the defendants of this, and we said, what you're doing is unlawful. It's a five-year jail sentence, if you continue to do so. On October 10th, we received our final answer, Your Honor, after two months of, quite frankly, very diligent and valiant attempts to get the defendants to comply with Federal law.

The only issue before you, today, Your Honor, is a very simple issue. Federal statute 52 U.S.C. --

THE COURT: What relief are you seeking? What are you asking me to do?

MR. STENSTROM: The only relief we're asking for, Your Honor, is a declaratory ruling from you that it is unlawful to provide mail-in ballots to unqualified electors. That's it. That's Federal law. It's a simple Federal statute, and we want you --

THE COURT: So, you want me to tell -- you want me

to issue an order to Delaware County and the defendants of Delaware County to say, you may not, what? What do you want me to do?

MR. STENSTROM: It is unlawful, under Federal law, provide a mail-in ballot to an unqualified elector.

THE COURT: Okay. Hold that thought.

MR. STENSTROM: Yes, sir.

THE COURT: Because I haven't let the lawyers for Delaware County speak.

Do you agree with his recitation of the law? I'm asking counsel for Delaware County. It's unlawful to provide a mail-in ballot to someone who is not legally registered to vote?

MR. STENSTROM: Not registered, Your Honor, qualified.

THE COURT: Qualified.

MR. STENSTROM: Registered is different.

THE COURT: Got it.

Counsel?

MS. MUNGIOLI: Your Honor, defendants disagree with the plaintiff's recitation of the law --

THE COURT: Is she being picked up on the mic?

COURTROOM DEPUTY: Yes.

THE COURT: Okay, go ahead.

You're fine. I just wanted to make sure we had it.

Go ahead.

MS. MUNGIOLI: Thank you, Your Honor. I'd submit that we disagree that this conduct, number one, has occurred in any way, shape or form. Number two, we disagree that the plaintiffs have pursued and completed the requisite procedures that they must before they can appear before you, because, most importantly, we submit that this Court, respectfully, does not have jurisdiction to hear this dispute, and, in fact, the plaintiffs' request for this Court to issue an order that a State or, I guess, now, it's not a request that the State -- adjudicate that the State has done any sort of misconduct or to adjudicate that the State has violated any sort of law.

It sounds, to me, based on the argument of this morning, from plaintiffs, that now, they're seeking only a declaratory ruling that it's unlawful to give ballots to unqualified electors. So, I'm not sure, exactly, why that is necessary, and I also submit that that's not what the Federal provision that the plaintiffs have cited actually states.

THE COURT: I'm sorry to interrupt you. I want to write down exactly what Mr. Stenstrom wants me to do.

Did you -- I wrote down, you want me to order Delaware County to follow the Federal law, which declares that only qualified persons are given mail-in ballots, did you say? Is that right?

MR. STENSTROM: Yes, Your Honor.

THE COURT: All right. When is -- when is the deadline for receipt of mail-in ballots? I'm asking counsel for Delaware County?

MR. PARKS: Your Honor, the deadline to apply --

THE COURT: Can I have your name, sir?

MR. PARKS: I'm sorry. Manly Parks, on behalf of the defendant.

It's the deadline to apply for mail-in ballots was yesterday, I believe --

UNIDENTIFIED SPEAKER: Tuesday.

MR. PARKS: -- Tuesday? Tuesday, thank you. And the County will return and turn around those applications, and I think, has turned around those applications already and approved the ones that it deems appropriate to approve, though voters have until 8:00 p.m. on election evening, when the polls close, to get those completed ballots back to the Board of Elections. Should the ballot arrive after the close of polls at 8:00 p.m. on election day, then the ballot is untimely and can't be counted.

So, I hope that addresses your question. If not --

THE COURT: Yes.

MR. PARKS: -- I'll try to.

THE COURT: Okay. No, it does.

MR. PARKS: Your Honor, one point to simply add in this area, there was a lot of discussion by Mr. Stenstrom

about exhausting remedies, and I would simply -- and our papers reference this -- but direct the Court to 25 P.S. 3146.8(f), which describes a process for objecting to mail and absentee ballot applications. There is a specific procedure in the Pennsylvania Election Code to deal with this. The process is not to come to Federal Court, where there is no jurisdiction, as our papers identified and ask a court for a declaratory ruling of the sort that Mr. Stenstrom just described.

I would also just submit that none of this is a matter of Federal jurisdiction, as our papers indicate, but I will turn back over to my colleague for further discussion of that.

THE COURT: I know we're bouncing back and forth, but it's a helpful discussion.

Mr. Stenstrom, your latest filed pleading -- and, by the way, have you served -- have you issued a summons in, we'll call it, the Delaware County case? Have you issued a summons? Have you served the defendants?

MR. STENSTROM: Yes, Your Honor, we did.

THE COURT: Is that right? Have you been properly served?

MS. MUNGIOLI: No, Your Honor, we have not. There has not been a summons that's been filed in this case.

MR. STENSTROM: Your Honor, we entered an affidavit

of service. It's in the record under --

THE COURT: Who did you serve?

MS. STENSTROM: We served Delaware County, the Board of Elections.

THE COURT: When?

MR. STENSTROM: We served them -- Laura Lewis, who is behind me, personally served them. She's an adult, over the age of 18.

THE COURT: When?

MR. STENSTROM: I believe it was last week, but we -- we provided -- we emailed --

THE COURT: How did you serve them?

MR. STENSTROM: In person, Your Honor.

THE COURT: Handed them --

MR. STENSTROM: Handed them the entire package, everything. We also emailed them, Your Honor.

THE COURT: Just one second. Does the Docket reflect it?

MR. STENSTROM: Yes, Your Honor, the affidavit of --

THE COURT: I'm asking my law clerk.

MR. STENSTROM: I'm sorry, Your Honor.

(Pause in proceedings.)

THE COURT: So, if we look on the Docket, it's going to reflect that our clerk's office issued a summons, and you've returned an affidavit of service?

MR. STENSTROM: Yes, Your Honor. The affidavit of service has been entered into the Docket.

THE COURT: And you served -- where did you serve it, at the Clerk's Office of Delaware County?

MR. STENSTROM: Yes, Your Honor, at the Board of Elections, and we also emailed immediately when we filed, Your Honor, on October 11th, counsel received an immediate emails, within moments after our filing, Your Honor.

THE COURT: Understood.

And, again, apologies for bouncing back and forth. I'm just asking questions as they come to my mind. In your latest filed complaint that you filed this morning, under the law, that's the operative complaint, your operative pleading. So, I just want to confirm. That's the one you want to go on, right?

MR. STENSTROM: That's a separate action, Your Honor.

THE COURT: Yeah, the Delaware -- we're calling it the Delaware County action, not the State action.

MR. STENSTROM: Oh, today is the Delaware County. What I provided you is just --

THE COURT: Delaware County.

MR. STENSTROM: -- judicial notice, Your Honor, just to let you know that we had done that.

THE COURT: Right. And I'm asking -- you've filed,

now, three pleadings, your original petition, your amended petition, and what you have, now, styled as a complaint, and I am asking you to confirm that what you've styled as a complaint is the operative pleading you want to proceed on?

MR. STENSTROM: Today?

THE COURT: Yes.

MR. STENSTROM: No, Your Honor.

THE COURT: Okay. Then, which one -- they all say different things. Which one do you want to go with?

MR. STENSTROM: Today, the amended complaint, which includes the original complaint in Child, et al versus Delaware County, is the subject of today's hearing, Your Honor.

THE COURT: Okay.

MR. STENSTROM: We only seek relief that's requested in that pleading.

THE COURT: Got it.

MR. STENSTROM: This morning was just judicial notice.

THE COURT: It's called an amended emergency petition as underlying complaint for declaratory judgment, right?

MR. STENSTROM: That was to solve the Rule 3 objections, Your Honor.

THE COURT: Got it. So, where, in here, does it

allege -- are you alleging any violation of Federal law?

MR. STENSTROM: Yes, Your Honor.

THE COURT: Okay. Show me where in the complaint.

MR. STENSTROM: In the amended complaint or the underlying complaint, Your Honor? The amended complaint?

THE COURT: In the complaint that you want me to consider.

MR. STENSTROM: Yes, Your Honor. One moment, I have it here.

(Pause in proceedings.)

MR. STENSTROM: The amended complaint, in the language, Your Honor --

THE COURT: Excuse me one second.

(Pause in proceedings.)

MR. STENSTROM: In the amended --

THE COURT: One second. Give me a second.

MR. STENSTROM: I'm sorry, Your Honor.

(Pause in proceedings.)

THE COURT: Okay. So, my question is -- and I don't know whether you have the document under the Docket, so we're talking about the same thing, document 11.

MR. STENSTROM: The amended complaint, Your Honor?

THE COURT: Yes.

MR. STENSTROM: I can bring that up, but I believe, if I -- if I --

THE COURT: Yeah, we're talking about the same thing. I'm asking you to show me where there is a Federal-alleged -- where there is an alleged Federal statute violation?

MR. STENSTROM: Your Honor, from memory, if you look at the first paragraph in the amended complaint, we ask to integrate the original -- we ask for declaratory action under 50 -- 28 U.S.C. 2201. That was, we just asked for declaratory relief, and in an abundance of caution, we filed the amended complaint, just so we could beat the Rule 3 --

THE COURT: Hold on. Hold on for a second. Show the gentleman what I'm looking at. Hand this over and make sure we're looking at the same document.

MR. STENSTROM: I understand, Your Honor, thank you. Thank you.

THE COURT: That's my copy, so give it back.

MR. STENSTROM: Yes, Your Honor.

(Pause in proceedings.)

MR. STENSTROM: In the complaint, Your Honor, in the amended complaint --

THE COURT: What I wanted to accomplish is that you and I are looking at the same document.

MR. STENSTROM: Yes, sir, Your Honor.

THE COURT: So, can I have that back, so you and I can have a conversation about it?

MR. STENSTROM: Yes, Your Honor.

THE COURT: And I am asking you to show me, in this latest filed document, which by the way, I am going to declare is the operative document, because that's what the law says -- it's an amended complaint -- where, in here, do you allege a violation of Federal law?

MR. STENSTROM: In the amended complaint, we --

THE COURT: Give me a page and paragraph.

MR. STENSTROM: -- we integrated the initial declaratory action. My understanding is a pro se --

THE COURT: Your (inaudible) on Federal jurisdiction is a declaratory judgment action?

MR. STENSTROM: No, is the -- no, Your Honor.

THE COURT: Okay.

MR. STENSTROM: We filed the original petition -- the original petition wasn't in the form of a complaint, and I know there's a fine line between the two. The original petition was filed with our understanding of 28 U.S.C. 2201. We were just asking, at that point, for a declaratory ruling and some injunctive relief, which we're not even -- and we haven't gotten to yet, Your Honor, but we'd ask for simple declaratory relief, out of frustration and out of the exhaustion of our administrative remedies to have a --

THE COURT: Okay. We're having a disconnect.

MR. STENSTROM: Your Honor, in the --

THE COURT: I'm going to ask -- I'll ask the question one more -- maybe I'm asking it unclear.

MR. STENSTROM: Yes, Your Honor.

THE COURT: So, whatever complaint you want to refer to -- there's three that you have filed, okay -- I am inclined to say, well, you're a pro se litigant, the law says, you know, I should give you a little leeway, which I'm really trying to do. My question is this, no matter which of the pleadings you filed, what are you -- aside from asking for declaratory relief, which is for me to say, Delaware do something, what Federal statute are you alleging that Delaware County violated? Just say what it is.

MR. STENSTROM: 52 U.S.C. -- Your Honor, one second. I'm bringing it up here.

(Pause in proceedings.)

THE COURT: Everything you're saying is being picked up, so if you want to confer with your colleague, here, do that privately, and then when you are ready to answer my question, go ahead.

MR. STENSTROM: Yes, Your Honor.

(Pause in proceedings.)

MR. STENSTROM: Your Honor, the specific --

THE COURT: Give me one second.

Go ahead.

MR. STENSTROM: Your Honor, the specific statute is

52 U.S.C., Section 20511. This Federal law prohibits the fraudulent registration of voters and the fraudulent issuance of mail-in ballots. Respondents have violated these provisions by failing to verify voter residency and determine that they are qualified and eligible voters before the provided mail-in ballots.

THE COURT: Okay.

MR. STENSTROM: 52 U.S.C. --

THE COURT: I have it in front of me.

MR. STENSTROM: Thank you, Your Honor. I'm sorry it took so long.

THE COURT: That's all right. No problem. Okay. All right. So, I've been bouncing back and forth with questions. I want to go back to the counsel for Delaware County, and I'll try to not interrupt you, now.

So, what's your position on all of this? I'm just going to listen.

MS. MUNGIOLI: Good morning, Your Honor.

Our position is that, number one, the Federal statute that the plaintiffs have identified, it's codified a criminal penalty for something, so there still has been no allegation that Delaware County or any of the defendants have violated a Federal law.

There is no subject matter jurisdiction here, respectfully, Your Honor, because they have not identified any

Federal question.

THE COURT: Well, they have alleged that your clients have violated a criminal statute, 20511.

MS. MUNGIOLI: Correct. That statutory provision is within the Help America Vote Act, in which there is no private cause of action, so that presents its own wrinkle. If they were to proceed and allege that there is some sort of violation under the National Voter Registration Act, then they have not established that they have completed the things that are required of them in order to trigger a private cause of action under that statute. So, it's unclear to the defendants how jurisdiction has been established by the plaintiffs, here.

And without having pled claims or any cognizable cause of action, it's difficult for us to piece together a response. They haven't identified any Federal common law cause of action. And, like I said, there is procedural and jurisdictional defects with the Federal statutes that they are citing to.

So, it's our position that this Court does not have jurisdiction, that the plaintiffs have not established standing, that any one of these filings, whether we're going to call it the original petition, the amended petition or whatever filing was filed this morning that they are now styling as a complaint, don't meet any of the pleading standards under Rule 8 or under the case law that's been set

forth in doctrinal cases, like Iqbal and Twombly. They have not met their pleading standard. And it's unclear to defendants what there is to respond to.

So, I think we can leave that at that.

THE COURT: Whoever has a cell phone on that's dinging, please turn that off.

Go ahead.

MS. MUNGIOLI: I think that's sufficient for now, Your Honor, but we're able to answer any questions that the Court may have, particularly in light of the alternative.

THE COURT: I do have a couple questions.

MS. MUNGIOLI: Certainly.

THE COURT: Unless I missed it, Delaware County did not raise a Purcell defense or issue, and do you have any thoughts on that? As I understand it, the Purcell Supreme Court relied on the prior case, Merill vs. Michigan and the operative language, I think everyone quotes, from Justice Kavanaugh, that says that Federal Courts should not ordinarily enjoin State election laws in the period close to an election. Do you have any thoughts on the Purcell matter?

MS. MUNGIOLI: Your Honor, to the extent that that is what they are seeking, then, yes, we would set forth that as a basis for our opposition, as well. But I do think, respectfully, Your Honor, that we did discuss the 11th Amendment's role in this proceeding, in that, assuming that

what the plaintiffs are asking this Court to do is to compel the Delaware County to comply with State laws, that that is not permissible under Penhurst an the 11th Amendment.

So, I agree with Your Honor that we did not, explicitly, set forth an argument in opposition, based on Purcell, but I would submit that that's out of confusion about what is really at play here.

THE COURT: Okay. All right. So, Mr. Stenstrom, here's what I'm thinking, seeking your input before I decide. I think that the way to do this is to, first, decide whether you have properly filed under the Federal Rules of Civil Procedure, a properly filed complaint and summons. You say that you did serve Delaware County. Delaware County says that you didn't. Our review of the Docket says that you didn't. But, I'm cognizant that you don't have a lawyer here, and I have to give you some leeway.

So, the first thing I want to do is determine whether we can even proceed any further based on process and whether you violated the Civil Rules or not. And the second thing I want to think about is whether there -- I even have jurisdiction over this matter, assuming I find that you haven't followed the Civil Rules and assuming that I am willing to cut you some slack there, do I even have jurisdiction to hear your matter. And assuming I do have jurisdiction to hear your matter, whether you have standing to

bring it and whether it's been filed too late.

So, what I would propose to do is, I've heard your respectful responses to my questions, and I appreciate how you conducted yourself, I would like to make determinations on those issues, because if I rule against you, there is no need for a hearing. And if I rule in your favor and decide that the case can go forward, the we can reconvene and take testimony.

But if you don't have jurisdiction, and you don't have standing, then there is no need for testimony. So, that's what I propose to do. I am prepared to give you an answer to all of those issues, hopefully, today, in some written opinion or order, and then we can see where we are. If I allow you to proceed, I will, you know, clear my calendar, and we can come back tomorrow or, you know, we still have four days before the election. We can do it.

So, that's my -- that's what I plan to do but wanted to get your thoughts on that before I proceed in that fashion. What do you think?

MR. STENSTROM: Your Honor, I truly appreciate, and the pro-se petitioners truly appreciate your recognition that we're pro se, and, you know, the according codes and statutes and case law that allows you to give us that leeway, and I really appreciate it. I think that you've been very patient with us, and I appreciate that.

I would like the opportunity -- and I agree with your plan, Your Honor. I would just like a brief moment to respond to a couple of things. You had mentioned Purcell, and I believe that was Purcell vs. Gonzalez, 549 U.S. 1, 2006, and in that case, the Supreme Court emphasized the importance of maintaining accurate voter rolls to protect the integrity of elections and prevent voter fraud. That was the primary thrust of Purcell vs. Gonzalez, which we cited as one -- we cite it in our pro se filings, which is one of the -- one of the cases.

But with that being said, you having cited that, we also cited Marbury in terms of imminent and irreparable harm. We cited Bush v. Gore, which also required, you know, in the cases of elections, even a day or two before, even post-elections, we've cited Bush v. Gore.

In terms of Rule 3, as I stated, we had filed the original, it was just a request. It was a petition of declaratory relief under 28 U.S.C. 2201. When we saw the objections, and we heard the hearing, we amended the complaint to meet Rule 3, which establishes that an action begins with the filing of complaint, a procedural step that the defendants argue is critical to Federal jurisdiction. Out of an abundance of caution, in response to your concerns, we filed the second paper you talked about, which is the amended complaint, and what we did is, we asked to incorporate the

original declaratory relief.

So, we believe, in good faith, that we -- all of our concerns were in the original filing, the request for declaratory relief, and we did the amendment of a complaint to meet Rule 3 objections.

With regard to Rule 8 and Rule 10, stating a cause of action, which is what Ms. Mungioli brought up, Rule 8 and Rule 10 require an outline of a short and plain statement of the claim, which is central to meet procedural requirements. While, in the cases, we did not style cause one, cause two, cause three, et cetera, what we would state is that, in both the initial filing and in the amended complaint, we provided a brief, concise request, which was the only thing, at this point, that you have the time for, Your Honor, and the only thing we can ask is that you, as a Federal judge, deconflict confusion that goes across the State, Delaware County. It affects Montgomery County, Fayette County, Chester County. We have actions in all of these, where there is a confusion -- I don't know if it's intentional or otherwise -- in terms of what Federal law is.

Marbury and also, well, Article II is different, the Article II, Section 3, take care clause. But Marbury states that only you, as a Federal judge, and only you, under Loper, the recent -- the Chevron deference, the removal of Chevron deference and the Loper-Bright, that does not allow people to

administratively, whether they're counties or, you know, some underlying official, that only you, as a Federal judge, have the authority to decide what Federal law is. That's Loper-Bright versus -- I can never say the last name -- Raimondo. I know you're familiar with the case, Your Honor.

So, that's why we're here, because we are exhausted, and before the election, whether the defendants choose to continue to break Federal law, the reason we're asking you for the declaratory relief is, for the love of God, we need to deconflict this across the State, and we need a Federal judge to instruct our government of what the law is, and the law is very simple under 52 U.S.C., I think it was, 20111, that says, you can't give a mail-in ballot to an unqualified elector. That's the law, period.

And if they choose to continue to break that law, Your Honor, we've just said, it's a five-year prison sentence, if you did so intentionally. It's a subject that's not even before the Court today.

THE COURT: Okay.

MR. STENSTROM: One last thing, Your Honor -- I apologize, Your Honor. I'm trying to move quickly just to meet the objections of the defendants, and I know you're going into consideration, Your Honor, but we also cited Rule 65, which governs preliminary objections requiring proof of irreparable harm, likelihood of success, balance of equities

and public interest.

Ms. Mungioli did make those objections, Rule 65 objections, and what we'd like to offer is that the irreparable harm is that, if a ballot is opened, one of these ballots somehow get into the system and is opened, once it is opened, and the ballot comes out, it's irretrievable. It's a fired bullet. And it cannot be repaired. There is no repair for that. And that is the irreparable harm that if these do make it into the -- if they continue to violate, you know -- and I'm not even asking for a hearing on that. We're just asking for a declaratory ruling on the briefs that says, it's illegal to do this. Whether they're doing that or not, and we have a hearing to discuss that, the narrow relief we're requesting from you, Your Honor, is just, as the authority, under Marbury and under Loper, you are the sole authority in this case.

THE COURT: Yeah, you've said that. I listened very carefully. You said that. You don't have to repeat it.

MR. STENSTROM: Thank you, Your Honor.

And that, in terms of standing, I believe, in our briefs -- we stand on our briefs -- that we have candidates here, and that Ms. Schwartz, myself, Mr. Rumley and Mr. Child --

THE COURT: Yes, I am well aware of all of your positions.

MR. STENSTROM: -- that we fulfill a statutory role, and that, I think we have demonstrated that we are particularized, concrete harm under Lujan, that we have stated that in our filings.

So, the objections raised by counsel, which you asked, I just wanted a chance to respond to, and, Your Honor, given that we are pro se, and before you make your decision, is there anything that they brought up and that we have not responded to that would be question?

THE COURT: No, I think I'm good. I mean, you know, so the dilemma is, you know, the clock is ticking, time is of the essence.

MR. STENSTROM: Bush v. Gore, Your Honor.

THE COURT: And what I would like to do is, and I think you've said you agree with my process, figure out the preliminary matters, and then, we know where to find you. If we're going to have a hearing, we will let you know forthwith, and I will clear my -- my calendar is already clear. So, thank you for that, sir.

And, Ms. Mungioli, do you agree with my proposed process, figure out whether the complaint is even valid, standing and jurisdiction, first, and then go from there?

MS. MUNGIOLI: Yes, certainly, Your Honor.

THE COURT: Okay. This matter is held under advisement, and I will get back to you as soon as possible.

Thank you.

COURTROOM DEPUTY: All rise.

MR. STENSTROM: Thank you, Your Honor.

(Proceedings concluded at 10:25 a.m.)

* * *

**C E R T I F I C A T I O N**

I, Jacqueline Mullica, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings on October 31, 2024 in the above-entitled matter.

/s/Jacqueline Mullica　　　　June 15, 2025

JACQUELINE MULLICA　　　　DATE

DIANA DOMAN TRANSCRIBING, LLC